UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Royalty Properties, LLC, | ) | Case No. 19 B 07692 |
| | ) | |
| Debtor. | ) | Judge: Jacqueline P. Cox |

Memorandum Opinion on the Motion for Relief from the Automatic Stay at Dkt. No. 4
and the Motion to Excuse Compliance with Section 543(b) at Dkt. No. 10

This matter comes before the Court for rulings on a Motion to Dismiss or in the Alternative, Relief from the Automatic Stay at Dkt. No. 4 and a Motion to Excuse Compliance with Section 543(b) at Dkt. No. 10. Both motions were filed by the Forest Preserve District of Cook County ("FPD") against the Debtor/Debtor-in-Possession, Royalty Properties, LLC ("Debtor"). The Debtor is an LLC formed by Richard and Meryl Cannon. FDP acquired its interests in the Property through a series of assignments (including a note, mortgage, assignment of rents, and other loan documents) involving Amcore, the Federal Deposit Insurance Corporation and Harris Bank, N.A., which became BMO Harris Bank. On May 15 and 16, 2019, this Court held an evidentiary hearing on the motions and took them under advisement.

In 2006, the Cannons purchased the Property through the entity it created, Royalty Properties, LLC, for $19.35 million; Amcore financed $14.5 million, the Cannons made an earnest deposit of $2 million, and the seller Horizon Farms loaned the Debtor $1.5 million.

FPD's position is that the Debtor filed for bankruptcy to delay a foreclosure action filed in June, 2009, that is set for trial in state court on May 20, 2019 as to other parties. *See* Dkt. No.

4, Exhibit 1. The foreclosure involves a 400-acre horse farm in Barrington Hills, Illinois, ("Property").[1]

The Debtor plans to use 100 acres of the Property as a hemp farm it claims will generate $8.3 million in gross profit this year; $16.7 million in 5 years. The Debtor valued the Property at $24 million and expects to collect about $25 million for the lawsuits it filed against FDP and Robert McGinley, et al.

**Motion to Excuse Compliance with Section 543(b)**

A party seeking to excuse compliance with the requirement under 11 U.S.C. § 543(d) must show by a preponderance of evidence that the best interests of the creditors are served by permitting a custodian to *retain* control of the estate. *In re Franklin*, 476 B.R. 545, 551 (Bankr. N.D. Ill. 2012) (emphasis added). The Property operated under a state court-appointed receiver until the Debtor filed for bankruptcy. A receiver appointed by a state court is a "custodian" subject to §543(b). *Id*. citing 11 U.S.C. §101(11). Section 543(b) of the Bankruptcy Code requires custodians to:

> deliver to the trustee any property of the debtor held or transferred to such custodian, or proceeds, product, offspring, rents or profits of such property, that is in such custodian's possession, custody or control on the date that such custodian acquires knowledge of the commencement of the case....

FDP's motion requests that the Court excuse compliance with § 543(b). Section 543(d) states:

> After notice and hearing, the bankruptcy court-
> (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to *continue* in possession, custody, or control of such property, and
> (2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

---

[1] The Property has *inter alia,* 3 residences, including a main house that is around 10,000 square feet, 11 barns, 150 tillable acres of hay and a conservation easement.

In response, the Debtor claims the Motion to Excuse Compliance is moot or otherwise untimely because the receiver turned over the Property before FPD filed its motion. The Court agrees. The statutory construction of Section 543(d) favors the Debtor. By returning possession to the Debtor under Section 543(b), FPD's adherence to the Bankruptcy Code is sound. However, in Section 543(d) (the section that provides the custodian leave to retain possession) the word "continue" precedes the phrase "in possession, custody or control of such property" suggests that FPD would be on firmer legal ground had it not returned possession to the Debtor before it filed its Motion to Excuse Compliance. In other words, FPD's compliance with Section 543(b) undermined its Motion to Excuse Compliance under Section 543(d).

**Motion for Relief from the Automatic Stay**

The Debtor's bankruptcy filing triggered the imposition of the automatic stay. FPD seeks the termination of the automatic stay under 11 U.S.C. § 362(d)(1) and (2) which states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

The Debtor has not provided adequate protection to FPD. The Debtor claims that the Property is worth $24 million in its petition and through Mr. Charles Argianas, the appraiser it hired. The Court finds that Mr. Argianas' testimony tarnished his credibility. In his report, he states the market is the best determinant of the Property's value. His report also states in his report farms similar to the Property were selling for $25,000 per acre and that similar farms were being listed for $80,000 per acre. Mr. Argianas' $24 million estimate was based on a $50,000

per acre value, double what similar farms are being sold for. Even if $24 million were an accurate appraisal, the Debtor's does not have any equity in the Property to provide adequate protection for FPD's claim of nearly $26 million dollars; nor has the Debtor proposed to pay adequate protection payments.

The Debtor has provided no evidence to counter FPD's assertion that is has paid no real estate taxes or any mortgage payments since 2009. In fact, the Debtor's secured creditor has paid its real estate taxes for several years. Instead, the Debtor argues that it has numerous defenses to the foreclosure such as economic duress and fraud in fact. Dkt. No. 25, p. 3. The Debtor's confidence in its defenses to the foreclosure undermines its need for bankruptcy protection.

Royalty Farms, LLC ("Royalty Farms") is the Debtor's sole tenant on the Property. Mrs. Cannon owns 40% of the Royalty Farms and her business partner, David Werner, owns 60%. Royalty Farms harvests hay from the Property but pays no rent to the Debtor; the state court terminated the lease as a burden on the Property. *See* Dkt. No. 10, Exhibit 4.

The Debtor intends to generate income by growing hemp. Even if the Court assumed that growing hemp does not flout the federal Controlled Substances Act, the Debtor has not proven its ability to succeed in this venture. The Court notes that on the first day of the evidentiary hearing May 15, 2019, the Debtor had to be compelled to produce an unsigned and redacted Memorandum of Understanding between it and a hemp seed supplier/buyer. The Debtor provided no signed agreements with any entity that assures the Court it can create and grow a hemp business. The Court heard credible expert testimony from Dr. Win Phippen (tenured professor from Western Illinois University) that explained that growing hemp is risky because, if any male plants pollinate, that will essentially destroy the value of the crop. He explained that

16 acres is the largest hemp farm in Illinois and that to grow hemp on 100 acres, as proposed by the Debtor, would require at least 10 full-time employees. By contrast, the Cannons are not hemp experts and have no experience growing it. They want to use sharecropping and equipment under the assumption that only one employee is needed to succeed. The Court finds that based on Dr. Phippen's testimony, growing hemp is speculative and requires outsized investment in employees and equipment that the Cannons cannot invest. The Court finds that the Debtor's prospects of a successful reorganization are very low.

Lastly, The Court is concerned that the Debtor is forum shopping to avoid litigating the foreclosure case. The Debtor's bankruptcy is the sixth forum that has involved the Property and it is finally ripe for trial in state court.

For the foregoing reasons, the Motion to Excuse Compliance with Section 543 at Dkt. No. 10 is denied. The Motion for Relief from the Automatic Stay at Dkt. No. 4 is granted; the state court is free to proceed with the trial set for May 20, 2019. This Court will have a status hearing on the bankruptcy case on Wednesday, June 19, 2019 at 11:00 a.m.

Judgments will be issued by separate orders.

**Date: May 17, 2019**                   **ENTERED:**

_____
Jacqueline P. Cox
United States Bankruptcy Judge