**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

In re ROYALTY PROPERTIES, LLC    )
                                 )  No. 19-07692
                                 )
                Debtor.           )
                                 )
                                 )
                                 )

**NOTICE OF MOTION**

**TO:**   John H. Redfield
          Crane, Simon, Clar & Dan
          135 S. LaSalle St., Suite 3705
          Chicago, IL 60603-4297
          jredfield@cranesimon.com

**PLEASE TAKE NOTICE** that on **July 17, 2019** at **1:00 PM**, counsel for Secured Creditor, the Forest Preserve District of Cook County, shall appear before the Honorable Bankruptcy Judge Jacqueline P. Cox or any other judge sitting in her stead, in Courtroom 680 in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, and then and there present the accompanying *Motion to Convert to Chapter 7 or Dismiss*.

                                         **FOREST PRESERVE DISTRICT
                                         OF COOK COUNTY**,

                                         By: s/Christopher Carmichael
                                              One of its Attorneys

Christopher W. Carmichael
**HENDERSON PARKS, LLC**
140 S. Dearborn St., Suite 1020
Chicago, Illinois 60604
Tel.: (312) 262-2900
ccarmichael@henderson-parks.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re ROYALTY PROPERTIES, LLC ) | |
| ) | No. 19-07692 |
| ) | |
| Debtor.  ) | Chapter 11 |
| ) | |
| ) | |
| ) | |

## MOTION TO CONVERT TO CHAPTER 7 OR DISMISS
## AND OBJECTION TO DEBTOR'S PLAN

Secured creditor, the Forest Preserve District of Cook County, moves to convert this Chapter 11 to a Chapter 7, or, in the alternative dismiss because this bankruptcy was filed in bad faith and the proposed plan has no likelihood of success. Chapter 11 permits the reorganization of an existing business not the starting of new ventures. Debtor seeks to embark upon a *completely new venture*, in which Debtor has no experience. Debtor's plan is more likely to result in liquidation than success. Moreover, the state court's entry of the Judgment of Foreclosure and Sale means that Debtor cannot reorganize. This Court should therefore convert this case to Chapter 7, or dismiss the bankruptcy, pursuant to 11 U.S.C. §§ 348(a) and 1112(b).

## Background

1.   Debtor is a single purpose entity as that term is used in the Code. *See In re Syed*, 238 B.R. 126, 132 (Bankr. N.D. Ill. 1999); *In re Uptown Bus. Ctr., LLC*, 2013 Bankr LEXIS 4324, at *11 (S.D. Ind. Bankr. Oct. 15, 2013).

2.   Debtor is an LLC and its sole asset is real estate, and specifically a

400-acre horse farm subject to a 2009 state court foreclosure proceeding. (Dkt. 4-3, Exh.1.)

3. Debtor represented, under oath, in state court that it "does not conduct any business operations" and had no employees. (Dkt. 4-3, Exh. 2, Verified Aff. Defs. pg. 1, ¶ 5.)

4. Debtor's March 2019 Report, filed with this Court, confirmed that Debtor has no income, no employees, and no operations. (*See* Dkt. 61.)

5. Debtor also represented to the IRS that from 2009 through 2017 that it was and is in the business of the "rental" of "real estate." (Dkt. 35-1, Exhibits 1-9, 2009-2017 Tax Returns.) Debtor reported to the IRS that it lost money on the real estate rental business every year for those eight years. (*Id.*)

6. The Debtor did not pay over $14,500,000 in loans used to purchase the real estate since 2009, or pay the property taxes since 2010. (Dkt. 4-4, Exhs. 10-12; Dkt. 4-5, Exh. 13.)

7. On June 21, 2019, the state court entered a judgment against the Debtor in the amount of $27,858,248.45, and rejected all of the Debtor's defenses and counterclaims. (**Exhibit 1**, Judgment of Foreclosure; **Exhibit 2**, Memorandum Opinion.)

8. The state court found that: "To this day, the Cannons have not re-paid so much as a cent of that $14.5 million. Despite the Cannons' contention that Amcore misrepresented the terms of the agreement, **it was the impression of the Court that the Cannons were willing to do and say anything in order to**

**obtain the Property, and the Cannons are still willing to do or say anything to keep the Property (except pay for it)."** (**Exhibit 2**, Memorandum Opinion, pg. 23, emphasis added.)

9.  The foreclosure sale of the property is set for July 29, 2019 at 10:30 AM. (**Exhibit 5**, Notice of Sale.)

## Argument

10.  Debtor did not propose the plan in good faith. *See In re LBJV, Ltd.*, 544 B.R. 401, 406 (Bankr. N.D. Ill. 2016) ("Reorganization plans have to be proposed in good faith pursuant to 11 U.S.C. § 1129(a)(3). Good faith generally means that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.").

11.  In addition, as this Court already found, the secured debts are greater than the value of the property and the Secured Creditor is not protected. (Dkt. 53, pg. 4.)

12.  Therefore, the Debtor has the burden of establishing that, at a minimum: "(1) '[i]t is moving meaningfully to propose a plan of reorganization;' (2) '[t]he proposed or contemplated plan has a realistic chance of being confirmed;' and (3) '[t]he proposed or contemplated plan is not patently unconfirmable.'" *See In re Cadwell's Corners P'ships*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994).

13.  The Debtor cannot meet the second or third requirements because the Debtor's plan is entirely speculative.

14.  Debtor proposed the plan for its principals to continue to possess the

- 3 -

property, which is not a good faith basis for a plan.

### A.    Debtor is not reorganizing under Chapter 11.

15.    The Debtor's plan is not confirmable under Chapter 11 because the Debtor is not reorganizing an existing business.

16.    When Debtor filed for bankruptcy it had no income, no operations, and no employees for its real estate rental business.  (*See* Dkt. 4-3, Exh. 2, Verified Aff. Defs. pg. 1, ¶ 5; Dkt. 61; Dkt. 35-1, Exhibits 1-9, 2009-2017 Tax Returns.) Immediately prior to filing, Debtor had only a single tenant who paid no rent.

17.    As the court in *In re Teltronics Services, Inc.* observed in dismissing a bankruptcy, where a debtor has no ongoing business, there is no business to rehabilitate under Chapter 11.  1980 Bankr. LEXIS 5202, at *84 (E.D.N.Y. Bankr. April 30, 1980) ("But when Teltronics filed its petition, it was already out of business; it had no office, no telephone, no useable inventory, and no employees.").

18.    Instead of reorganizing, the Debtor is taking the existing assets and starting a *new business*.

19.    The purpose of Chapter 11 is "to reorganize or rehabilitate an existing enterprise," not "to create and organize a new business".  *In re SR Real Estate Holdings, LLC*, 506 B.R. 121, 126 (Bankr. S.D. Cal. 2014) (citation omitted) (dismissing bankruptcy).

20.     Starting a new business is inconsistent with the purpose of Chapter 11.

21. If Debtor wants to start a new hemp growing business, it should raise new capital and invest in that new business.

22. What Debtor cannot do is use Chapter 11 to force the secured creditor to subsidize Debtor's new business venture.

23. For this reason alone, the plan is not confirmable and the bankruptcy should be dismissed.

**B.** **Debtor's plan cannot succeed because the planting deadline passed.**

24. In addition, Debtor's plan cannot succeed because Debtor did not meet its own deadline for planting hemp.

25. Under direct examination by Debtor's counsel, the principal of the Debtor testified that:

> Q: Well, it's May now, the middle of May. When do you have to plant for -- to get a crop this season?
> A: First week of June is fine.
>
> Q: **What's the latest you could plant?**
> A: **June 15**.
>
> Q: So you have to -- we have to -- **you have to get plants -- the seeds in the ground basically by that date, is that correct**?
> A: **Correc**t.

(**Exhibit 3**, 5/15/19 Tr. 24:16-25.)

26. Debtor first said that crops needed to be planted by the first week of June, and then clarified that the *latest possible date* for planting was June 15th.

27. Debtor was harvesting the hay and tilling the ground through June 17th, and did not start planting the hemp seeds until after June 15th. (**Exhibit 6**, McGinley Affidavit.) In fact, Debtor was cultivating on June 26th at 11 PM. (*Id.*)

28. Even the June deadline was late, as Dr. Phippen testified. Dr. Phippen, the only person knowledgeable about growing hemp in Illinois to testify, said that if hemp was being grown from seed, "you want the seeds in the ground by mid-May," but that transplants (young plants already growing) "could go in the ground first week of June." (**Exhibit 4**, 5/14/19 Tr. 25:15-21.)

29. Debtor planted seeds, which Dr. Phippen testified needed to be planted in mid-May to have even a chance of success.

30. As Professor Phippen testified, "the likelihood of being very successful [in growing hemp] is actually quite small." (*Id.* 16:20-21.)

31. Debtor's scheme has no chance of success because the hemp crop was not planted in sufficient time to grow to maturity.

**C.   Debtor's financial projections are pure speculation.**

32. Debtor's plan is also unconfirmable because Debtor's financial projections and figures are unrealistic.

33. Debtor was required to submit a feasible plan that was based on concrete information and not speculation.

34. "The purpose of the feasibility requirement is to prevent confirmation of a visionary scheme promising more than the debtor possibly can achieve." *In re 8th St. Village Ltd., P'Ship*, 88 B.R. 856, 857 (Bankr. N.D. Ill. 1988) (finding "[o]n

its face, the debtor's proposed plan is not an 'effective reorganization' based on the speculative nature of debtor's projections).

35.  Debtor's projection of a *net profit* of $85,000,000 over 5 years is unsupported by anything other than speculation about a series of contingencies. (**Exhibit 3**, 5/15/19 Tr. 48:17-49:8.)

36.  In *8th St. Village Ltd., P'Ship*, the court rejected the plan finding that "[t]he debtor's numbers provided in its financial projections are speculative at best" and premised on what may happen in the local economy.  88 B.R. at 860 ("the plan was nothing more than a proposal by the debtor to speculate over the next nine years with the Bank's money").

37.  In this case, Debtor's *projections* are based by a series of *contingencies*, starting with the hemp crop growing until harvest and not being wiped out by cross-pollination, frost, flooding, wind, and insects.[1]  (**Exhibit 4**, 5/14/19 Tr. 9:14-10:21; 14:16-19; 19:7-20:19; 47:6-48:11; 55:9-18.)  Because of the highly regulated nature of this crop, Debtor also runs the risk that the entire crop could be ordered to be destroyed.  (*Id.*)

38.  Debtor's figures are based on the additional speculation about the *future* yields on that crop (how much will actually be harvested), and about the *future* of the market for that crop and prices for the crop.  (*Id.* 48:12-49:5.)

39.  Debtor's projections are "based on a series of contingencies and

---

[1] The Debtor's involvement with the *hay farmer* Tyke Nichols does nothing to assuage the growing risks because hemp is a very labor-intensive crop, as Professor Phippen testified, and Debtor and Mr. Nichols appear to believe that little labor would be required.  (**Exhibit 4**, 5/14/19 Tr. 20:21-21:24; 50:2-20; *see also* 6:20-7:24; 10:22-15:5; 18:2-8.)

- 7 -

speculation" which "does not satisfy" the burden to show that the plan has a reasonable probability of success. *In re Highland Park Assoc. Ltd. P'Ship*, 130 B.R. 55, 58 (Bankr. N.D. Ill. 1999) (lifting automatic stay, finding that debtor's proposal was too speculative).

40.  Debtor's speculation about the market for the crop is no different than the local economic speculation found to be insufficient in *8th St. Village Ltd., P'Ship*.

41.  Debtor's projection of $85,000,000 in profit over the next five years must also be contrasted with Debtor's lack of income in the past eight years. Debtor will purportedly go from making $0 a year to $8,500,000. (*See* Dkt. 38, Plan.) This context demonstrates that Debtor's figures are pure speculation.

42.  Debtor has pointed to its contract with AG Green Farms as showing that the plan is viable because a contract "gives rise to legally binding obligations." (Dkt. 71, pg. 3.)

43.  But, the existence of a signed contract with AG Green Farms does not show that Debtor's plan is likely to succeed. On the contrary, the contract with AG AG Green Farms undermines all of Debtor's assertions because AG Green Farms *is not legally obligated* to pay debtor a dime.[2]

44.  While Debtor claims that the hemp crop will generate millions, AG

---

[2] Debtor has presented no evidence, such as bank statements and proof of prior successful hemp projects of similar size and scope, of AG Green Farms' experience in growing hemp, growing hemp in Illinois, or its financial capabilities. This is important information because AG Green Farms is a brand-new entity that is not even registered to do business in Illinois. Debtor's assertions are based on unsupported, self-serving statements.

Green Farms is unwilling represent or warrant any figures and AG Green Farms refused to accept any responsibility for the hemp crop generating a profit.

45.     In the contract, AG Green Farms explicitly refuses to make any "representations or warranties as to the market value of the initial Hemp Crop," and specifically disclaims any "liability to RP or any other person due to the value of the initial or any other Hemp Crop being less than RP's or any other person's estimates of the value thereof." (Dkt. 55-1, pg. 4.)

46.     Thus, although Debtor claims that the hemp could generate huge profits, AG Green Farms refuses to provide any assurance or guaranty that there will be *any profit*.

47.     The AG Green Farms contract demonstrates that Debtor's assertions are simply hopeful projections of desperate people who, as the state court found, will say and do anything to hold onto this property (except pay their debts).

48.     The most recent documentation filed by Debtor confirms that the projections are pie-in-the-sky.

49.     On June 26, 2019, Debtor filed a reply claiming that Debtor will not generate $8,500,000 in the first year, but will actually generate $120,000,000.[3] (Dkt. 71.) In one month, Debtor's projections increased 10-fold.

50.     This new projection is absurd. Debtor's own filing concedes that this figure is nothing short of "amazing". (*Id.*)

---

[3] Debtor's plan projected $8,500,000 in the first year (based on $100,000 an acre for a gross revenue of $10,000,000). Debtor's new projection has the crop generating $1,200,000 an acre for a gross revenue of $120,000,000 in the first year.

51. This most recent filing confirms that Debtor's projections are pure speculation.

### D. **Debtor's plan is based on requirements that Debtor cannot meet**.

52. Debtor's plan and the contract with AG Green Farms calls for Debtor to grow "organic" hemp.

53. Debtor's property has not been certified as organic, and that process takes three years, plus Debtor would need to plan certified organic hemp seeds, and those do not exist. (**Exhibit 4**, 5/14/19 Tr. 36:17-38:3.)

54. The Debtor's crop will therefore not be in compliance with the AG Green Farms contract.

55. Debtor's principal asserts that she can simply call a non-organically grown product "organic". That is fraud and mislabeling.

56. Debtor cannot ask a Bankruptcy Court for confirmation of a plan that will require Debtor to make misstatements about the very product Debtor intends to produce.

### E. **Debtor's plan is unconfirmable after the foreclosure judgment.**

57. The state court's findings against the Debtor and entry of the Judgment of Foreclosure and Sale renders this bankruptcy filing moot. *See In re 801 S. Wells St. Ltd., P-Ship*, 192 B.R. 718, (N.D. Ill. 1996) ("In this case, however, the foreclosure proceedings await only a final order, neither the debtor nor the unsecured creditors have an interest in the property, and no bankruptcy purpose is served by retention of jurisdiction.").

58. Debtor came to this Court in March 2019 after a decade of non-payment of its obligations.

59. Debtor borrowed over $16,000,000 to purchase the real property at issue in 2006.[4]

60. Debtor never paid back those loans and a foreclosure action was filed in 2009.

61. Yet, Debtor did not file for bankruptcy to reorganize in 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, or 2018.

62. Debtor delayed paying its debts for 10 years and then strategically filed for bankruptcy just before the state court trial was set to commence.

63. The 10-year delay, and Debtor's lack of business operations during those 10 years, demonstrates that there is no business to reorganize.

64. Moreover, when the Debtor's allegations were finally put to the test of actual proof, they were found to be false. (**Exhibit 2**, Memorandum Opinion.)

65. Because the state court found against the Debtor and entered a $27,858,248.45 Judgment of Foreclosure and Sale, no plan can be confirmed. (**Exhibit** 1, Judgment of Foreclosure.)

66. The property will be sold at a foreclosure sale in short order. (**Exhibit 5**, Notice of Sale.) In the unlikely event that there are excess proceeds, above the

---

[4] The plan also should not be confirmed because Debtor proposes to treat the two secured creditors, who are in the same class, differently, by paying more to one than the other. This disparate treatment would also warrant denial of the plan.

- 11 -

secured creditor's judgment, then those could be returned to the estate for distribution under Chapter 7.

## Conclusion

67. Debtor used the Bankruptcy Code to "dodge" the state court foreclosure action and maintain its principal's control over the property. *See* In re LBJV, Ltd., 544 B.R. at 406 (finding debtor's purpose was determine who obtains the asset and to forum shop).

68. Debtor's plan is pure speculation, and improperly uses the secured creditor to finance a new business venture.

69. Moreover, despite all of Debtor's projections of exorbitant profits, Debtor has never offered to make protection payments. *See* 11 U.S.C. § 506(b).

70. Debtor's refusal to pay its secured creditor confirms that Debtor is gambling with the secured creditor's money.

**WHEREFORE**, This Court should convert this bad faith filing to a Chapter 7, pending the foreclosure sale, or dismiss this bankruptcy.

    Respectfully submitted,

    **FOREST PRESERVE DISTRICT OF COOK COUNTY**,

    By: s/Christopher Carmichael
        One of its Attorneys

Victor P. Henderson
Christopher W. Carmichael
**HENDERSON PARKS, LLC**
140 S. Dearborn St., Suite 1020
Chicago, Illinois 60604
Tel.: (312) 262-2900
vphenderson@henderson-parks.com
ccarmichael@henderson-parks.com

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on **July 1, 2019**, a copy of the foregoing **Motion to Convert to Chapter 7 Or Dismiss And Objection to Debtor's Plan** and was filed via the Northern District of Illinois Bankruptcy Court's ECF system and served upon all parties that have registered to receive ECF notice in this bankruptcy case.

/s/ Christopher Carmichael