UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Royalty Properties, LLC, | ) | Case No. 19 B 07692 |
| | ) | |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

**Memorandum Opinion on Motion to Convert to Chapter 7 or Dismiss and
Objection to Debtor's Plan (Docket 74)**

**I. Jurisdiction**

This Court has jurisdiction to hear and determine this motion pursuant to 28 U.S.C. § 1334(a), which provides that federal district courts have original and exclusive jurisdiction of all cases filed under the Bankruptcy Code, title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 157(a) allows the district courts to refer title 11 cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has promulgated Internal Operating Procedure 15(a), which refers its bankruptcy cases to the judges of this court. This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. § 157(b)(2)(A) - matters concerning the administration of a bankruptcy estate - the motion to dismiss or convert.

**II. Facts and Background**

The Debtor, Royalty Properties, LLC, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 19, 2019. It owns and operates Horizon Farms in Barrington Hills, Illinois; it manages its business and financial affairs as a debtor-in-possession pursuant to

11 U.S.C. § 1108.

Horizon Farms is a 400-acre horse farm which consists of eleven barns, three residences including a large residence known as Hunt Ridge, a guest house, a farm house, a duplex staff house, a bunk house, staff apartment building, race track, hunter jumper arena, jumper trail, a shed, a dog kennel, an equipment shop, pastured paddocks, internal roads, two running creeks, a 20-acre lake, an 8-acre conservation area, a 15-acre wooded area and 150 tillable acres. Schedule D: Creditors Who Have Claims Secured by Property, Docket 18, p. 1; Motion to Convert to Chapter 7 or Dismiss and Objection to Debtor's Plan, Docket 74, Ex. 2, p. 3, Memorandum Opinion in Foreclosure Case - "Foreclosure Opinion."

The Debtor's principals are a married couple, Richard and Meryl Cannon. Mr. Cannon is a patent attorney. Mrs. Cannon is the founder and CEO of Merix Pharmaceutical, Corp.

According to its federal 2017 Tax Return the Debtor's pre-petition business consisted of renting real estate. Exhibit 16. It suffered a $43, 815 loss that year. The tenant is a related entity, Royalty Farms, LLC, which grew hay on the property. Motion of Debtor to Approve Contracts to Grow Hemp, Docket 56, p. 2, ¶ 11. The Debtor's gross revenue for 2018 was $0.00. Schedule D, Docket 18, p. 13.

The Debtor wants to satisfy its debts with the proceeds of farming hemp/hemp seeds. Industrial hemp and marijuana are variations of the cannabis sativa plant. The main difference between the two is the amount of a mind-altering, psychoactive compound called delta -9 tetrahydrocannabinol (THC) that each plant contains. Industrial hemp has .3% or lower amounts of THC and marijuana tends to have 1% or more. Renée Johnson, Cong. Research Serv., R44742, 3 *Defining Hemp: A Fact Sheet* (March 22, 2019); Transcript of testimony of Western

Illinois University Professor Dr. Winthrop Phippen ("Transcript"), Docket 77, p. 38. Generally, "1% THC is considered the threshold for cannabis to have a psychotropic effect or an intoxicating potential." Renee Johnson, *supra*. Despite this significant difference, the Controlled Substances Act of 1970 categorized all forms of cannabis (including industrial hemp) as Schedule I drugs and made them illegal to grow in the United States. Elizabeth Ousley, *Hemp: How the Comeback Crop is Budding in the Bluegrass*, 11 Ky. J. Equine, Agric. & Nat. Resources L. 103, 104 (2018-2019). In 2018, the Agricultural Improvement Act of 2018 (commonly called the 2018 Farm Bill) changed this by removing industrial hemp from the controlled substances list. 21 USC § 802(16). The 2018 Farm Bill in effect legalized hemp and its derivative products. *U.S. v. Mallory*, 2019 WL 252530, *3 (S.D.W. Va. 2019).

Dr. Phippen's testimony is relevant to the court's evaluation of whether the Debtor's plan to grow and sell hemp and or hemp seed is reasonable. He testified that growing hemp is very different from growing hay. Transcript pp. 10-11 and 51: spacing requirements and weeds. He also testified that it is not now clear what diseases are expected from hemp production. Transcript p. 47. He also said that hemp production efforts are not likely to make money in their first year. Transcript pp. 22-23.

The court finds that the Debtor's plan is not reasonable at this time, 10 years after its secured creditor (and its successor the Forest Preserve District) sought to foreclose on the debt owed for the 2006 purchase of the farm. According to the state court not one payment has been made on the debt. Foreclosure Opinion, p. 23 ("To this day the Cannons have not repaid so much as a cent of that $14.5 million.")

This court noted in its May 17, 2019 Opinion granting relief from the automatic stay that

the Debtor did not oppose the Forest Preserve District's assertion that it had not paid all real estate taxes due since 2009. Stay Relief Opinion, Docket 48, p. 4. The court recalls being told that the Forest Preserve District has paid some of the farm's real estate taxes which are delinquent in the amount of $173,830. Required Statement To Accompany Motions for Relief from Stay, Docket 4, p. 17.

### III. Secured Debt and Lawsuits

In 2006, the Debtor and a related entity, Cannon Squires Properties, LLC, borrowed $14,500,000.00 from Amcore Bank to finance the purchase of the farm. It also borrowed $1,500,000.00 from the McGinley Marital Trust, the seller. The loan documents, mortgages, notes and assignments of rent were eventually transferred to the Forest Preserve District of Cook County, Illinois - the first lien holder and to McGinley Partners, LLC - the second lien holder.

A mortgage foreclosure complaint was filed in the Circuit Court of Cook County, Illinois in 2009 alleging that the Debtor and it principals, who guaranteed the debt, were in default on their obligations to repay the loan.

Meryl Cannon testified at an August, 2019 hearing that she did not know why Amcore Bank defaulted the obligors on the loan. The judge in the foreclosure case found that the Debtor's principals admitted in that case that they defaulted on purpose.

Several other lawsuits were filed against the secured creditors in state and federal court by the Debtor and its principals; several appeals were pursued. After the Debtor and its principals failed in those lawsuits and a previous foreclosure judgment was reversed on appeal the foreclosure case was set to proceed to trial on February 25, 2019; the trial date was reset to May 20, 2019.[1] This bankruptcy case was filed in the interim on March 19, 2019.

Filing a bankruptcy case operates as an automatic stay applicable to all entities of acts to collect or recover a claim against the debtor that arose before commencement of the bankruptcy case. *In re Thigpen*, 600 B.R. 19, 23 (Bankr. N.D. Ill. 2019); 11 U.S.C. § 362(a). The automatic stay was modified on May 17, 2019 after a contested hearing where the Forest Preserve District presented expert testimony of Professor Phippen that producing hemp crops are not a sure thing. The Debtor did not present expert testimony in opposition. This court found that "the Debtor has not proven its ability to succeed in this venture." *See* Stay Relief Opinion, Docket 48. p. 4. That order was not appealed although an order which grants a motion to modify the automatic stay is final and appealable. 28 U.S.C. § 158(a)(1); *In re Sonnax Industries, Inc.*, 907 F. 2d 1280, 1283 (2nd Cir. 1990); *In re Comer*, 716 F.2d 168, 172 (3rd Cir. 1983) ("[T]he district court's order lifting the stay . . . is final in the sense that it completes litigation on the question and subjects the property to a foreclosure action in state court. Nothing more need be done by the district court or the bankruptcy court on the matter of the automatic stay, and the order of the district court ends this particular controversy between debtors and creditors.").

The foreclosure case proceeded to trial. The Forest Preserve District obtained a judgment in the amount of $27,858,248.45 on June 21, 2019 against the Debtor and the Cannons. Docket 74, Ex. 1, Foreclosure Judgment, p. 6. Secured creditor McGinley Partners obtained a judgment in case 2014 L 005231 in the amount of $8,320,669.43 against the Debtor and the Cannons. Docket 18, Schedule D; Foreclosure Opinion, p. 11. The Debtor and its principals have recently filed two new lawsuits in the Circuit Court of Cook County, Illinois: Case 2019 L 007133, suing the Forest Preserve District, court-appointed receiver Mary B. Grossman and V & G Property Management, LLC regarding the upkeep of the farm while the receiver had possession pursuant

to a state court order, before bankruptcy relief was sought and Case 19 L 1682, suing persons related to secured creditor McGinley Partners, LLC for fraud, conspiracy, forgery, negligence and negligent misrepresentation.[2]

A state court denied a request in the 2019 L 007133 case for a temporary restraining order seeking to stay the foreclosure case until resolution of the new allegations.

### IV. Forest Preserve District's Motion to Dismiss or Convert and Objection to Plan

The Forest Preserve District asks this court to dismiss or convert this case to chapter 7 pursuant to 11 U.S.C. §§ 348(a) and 1112(b).

The relevant law can be found at § 1112(b)(1) of the Bankruptcy Code:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

The Forest Preserve District also argues that the Debtor did not propose its plan in good faith. "Reorganization plans have to be proposed in good faith pursuant to 11 U.S.C. § 1129(a)(3). Good faith generally means that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re LJBV, LTD*, 544 B.R. 401, 406 (Bankr. N.D. Ill. 2016) (internal citation omitted).

"Although section 1112(b) does not explicitly provide that a lack of good faith may constitute cause, section 1129(a)(3) does require that plans be 'proposed in good faith'; courts have sensibly considered bad faith to be an acceptable basis for conversion or dismissal." *In re*

*Jartran, Inc.*, 886 F.2d 859, 867 (7th Cir. 1989).

To dismiss or convert a chapter 11 case to chapter 7 a court must first determine whether the party moving for dismissal has established that "cause" exists. Section 1112(b)(4) provides a non-exhaustive list of examples of "cause."

Should the court find cause to dismiss, the case must be dismissed unless (1) the court "specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and (2) the debtor or any other party in interest establishes that (A) there is a reasonable likelihood that a plan will be confirmed" within a certain time frame, and (B) "the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)" ( the substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation). The debtor or any other party may show that (i) there is a reasonable justification for the act or omission and (ii) that it will be cured within a reasonable period of time fixed by the court. *In re Attack Properties, LLC*, 478 B.R. 337, 341 (N.D. Ill. 2012).

The movant bears the initial burden to establish cause. *Matter of Woodbrook*, 19 F.3d 312, 317 (7th Cir. 1994). It must be established by a preponderance of the evidence. *In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011).

If the party opposing the motion to dismiss or convert fails to meet the burden under § 1112(b), the court has to determine whether the dismissal or conversion to chapter 7 would be in the best interests of creditors and the bankruptcy estate.

### V. Cause for Conversion or Dismissal

**A. Failure to Seek Court Approval of Loans to the Debtor; Diminution of Estate**

The Monthly Operating Report filed by the Debtor at Docket 69 shows that during the period ending April 30, 2019 it received six loans totaling $7,600.00. The Monthly Operating Report at Docket 70 shows that during the period ending May 31, 2019 it received six loans totaling $11,500. The Monthly Operating Report filed at Docket 104 shows that during the period ending June 30, 2019 the Debtor received five non-repayable gifts from Merix Pharmaceutical Corp. totaling $21,500.00.

During various court hearings the Forest Preserve District told the court that the Debtor had obtained loans without court authority. The Debtor then reported that the funds received were gifts, not loans as previously reported. Bankruptcy Code § 364 allows debtors to secure unsecured debt without court approval in the ordinary course of business if it is authorized to operate its business. The creditor can receive an administrative expense claim. Debtors may incur debt outside the ordinary course of business only if authorized by court after notice and a hearing. The loans reported in the earlier Monthly Operating Reports may have been made in the ordinary course of business, not requiring court approval. However, changing the later Monthly Operating Report where the funds received are designated as gifts gives the court pause. When challenged the Debtor should have explained what it was doing and if it was valid to do so. Instead, it designated the receipts as something else. In any event, the funds were not generated through the Debtor's business efforts which amounts to "cause" under § 1112(b)(4) "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." The Debtor cannot now show that it can generate income. Without the loans or gifts the bankruptcy estate's current liabilities are increasing more rapidly than cash is available to pay as due. "The result is dwindling liquidity, or illiquidity resulting in unpaid postpetition

debts which usually constitute administrative expenses that will take priority over prepetition claims." 7 COLLIER ON BANKRUPTCY ¶ 1112.04[6][a] (Richard Levin & Henry J. Sommer eds., 16th ed.).

The Debtor has not shown financial progress during this case. It hopes to gross several million dollars staring in January, 2020. The Debtor's hopes are speculative. Based on the evidence heard at the hearings, the court finds that it has no experience producing and selling hemp or hemp seeds. The court is not convinced that its inaugural crop (or future crops) will bear the amount and quality of hemp capable of bringing in several million dollars.

The Debtor's Plan of Reorganization, Docket 32, was filed on May 7, 2019. The Forest Preserve District argues that the Plan is based on requirements that it can not meet. The automatic stay was lifted on May 17, 2019 (that order was amended on May 21, 2019, waiving the 14-day stay provided by Bankruptcy Rule 4001(a)(3)). Following the entry of the stay lift order the Debtor filed two motions seeking court approval of contracts. The first was filed on June 6, 2019 at Docket 56, Motion of Debtor to Approve Contracts to Grow Hemp to have AG Green Farms, LLC plant 210,000 hemp plants on 100 acres for harvest in September, 2019. The Debtor expected to harvest hemp seed and hemp biomass to produce CBD that would yield over $10,000,000 gross proceeds. That agreement provided for the services of consultant Walter B. Fuqua. The motion included a Crop Share agreement with Tyke Nicholas who was to provide labor and equipment.

At August, 2019 hearings it was disclosed that Mr. Whalen of AG Green Farm, LLC will receive 45% of all profits, Mr. Fuqua will receive 10% of profits and Mr. Nicholas was to get a fee of 10% of the gross proceeds, capped at $1,000,000. That accounts for 55% of the Debtor's

gross proceeds or profits.

The issue is whether the Debtor can produce organic hemp/seeds as promised in the contract with AG Green Farm. *See* AG Green Farm contract, Docket 56, Ex. 1, p. 2, ¶¶ B. 2, 3. The evidence to date is that the farm is not organic and that it may take three years to obtain that designation. Phippen Transcript, p. 36. Should the court confirm a plan based on a contract that misrepresents the organic status of a crop? No. In addition, at the hearing it was disclosed that the AG Green Farm was incorporated this year and that its place of business is an apartment that is rented as an airbnb unit on weekends.

Neither AG Green Farm nor the Debtor has sufficient experience growing, harvesting or selling hemp biomass and hemp seeds to support the Debtor's financial projections.

Mr. Fuqua testified that they originally sought to grow and sell hemp biomass but decided to instead grow and sell hemp seeds because the demand for seeds will increase dramatically now that the U.S. government no longer schedules hemp as a controlled substance.

The financial projections were all over the place. Will the crop generate $10,000.000 in a few months or $120,000,000 by January, 2020? None of the testimony offered made sense because the Debtor has no experience in producing and selling hemp or hemp seeds. The court can not determine from the evidence presented that the Debtor's soil will produce the projected amounts and quality of hemp seed needed to generate sufficient funds to satisfy the debts in issue in a reasonable amount of time. The Debtor's plan is not based on fact-based projections designed to preserve an ongoing business. *In re LJBV, LTD*, 544 B.R. 401, 406 (Bankr. N.D. Ill. 2016). The plan now based on growing and selling hemp seeds is not realistic. The court has not been assured that the Debtor's efforts will maximize value for its creditors.

Most damning is that the Debtor and its principals are still suing its secured creditors. It would be an abuse of discretion to stop the Forest Preserve District's foreclosure case, confirm the proposed plan, and require it to wait five years to get paid while also defending the lawsuit filed against it this year. At the final argument on the above motion the Forest Preserve District's attorney noted that the Debtor's business is pursuing litigation, not growing hemp to reorganize a business to satisfy debts owed its creditors. It sounded harsh; however, on reflection this court agrees. After defending the foreclosure case for ten years, it is now time to pay the debts owed. The new lawsuits may be barred by res judicata considering that the secured creditors have final judgments in their favor. Res judicata bars re-litigation of claims that were litigated as well as claims that should have been raised in the resolved cases, perhaps, as compulsory counterclaims.

### B. Use of Bankruptcy System as a Litigation Tactic

This court has to assure that debtors do not invoke the Bankruptcy Code illegitimately. However, this duty has to be balanced against the policy of open access to the bankruptcy process. *In re Schlangen*, 91 B.R. 834, 837 (Bankr. N.D. Ill. 1988) ("the court must be careful not to deny the protection of the Bankruptcy Code to a Debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith."). That court noted that the good faith standard should be viewed objectively rather than subjectively. This court agrees and has weighed the totality of the circumstances herein objectively in concluding that this case was not filed in good faith.

As in *Schlangen*, this court's inquiry will focus on the presence or absence of objective factors rather than the Debtor's subjective intent. The factors include whether the bankruptcy

case serves as a litigation tactic in essentially a two-party dispute, that the Debtor has few or no unsecured creditors, that there are few debts owed to non-moving creditors, that the Debtor has previously filed a bankruptcy case, that the petition was filed to delay foreclosure of the Debtor's only or primary asset, that the Debtor has no ongoing business and whether there is a possibility of rehabilitating the Debtor's business.

The Forest Preserve District is not the Debtor's only creditor, however, to date McGinley Partners, another secured creditor holding a large claim, has not filed any motions or adversary proceedings in this case. As for unsecured creditors, the court notes that its largest unsecured creditor is Merix Pharmaceutical Corp. which Meryl Cannon founded. The Debtor owed Merix $447,300.15 on the petition date. Schedule E/F - Creditors Who Have Unsecured Claims, Docket 18.

Now that a money judgment has been entered in the foreclosure action the Debtor and its principals may face enforcement litigation. Under Illinois Supreme Court Rule 305 judgment debtors may be required to post a bond or other form of security:

> The enforcement of a judgment for money only, or any portion of a judgment which is for money, shall be stayed if a timely notice of appeal is filed and an appeal bond or other form of security, including, but not limited to, letters of credit, escrow agreements, and certificates of deposit, is presented to, approved by and filed with the court within the time for filing the notice of appeal or within any extension of time granted under paragraph (c) of this rule.
>
> . . .
>
> The bond or other form of security ordinarily shall be in an amount sufficient to cover the amount of the judgment and costs plus interest reasonably anticipated to accrue during the pendency of the appeal.

An appeal bond is not necessary to file an appeal to a foreclosure judgment. Illinois law

separates the right to appeal and the duty to file a bond to stay enforcement of money judgments. *Hamilton Corp. v. Alexander,* 290 N.E.2d 589, 590 (Ill. 1972).

This case does not serve the purposes of a chapter 11 reorganization. Its purpose is to continue to delay and frustrate the Debtor's secured creditors and to use the bankruptcy system's automatic stay to avoid securing and paying for a bond while appealing the June 21, 2019 $27, 858,248.45 judgment. *In re American Telecom*, 304 B.R. 867 (Bankr. N.D. Ill. 2004) (Bankruptcy case dismissed as serving only to stay judgment creditor's collection effort, to relieve debtor of need to post supersedeas bond, and to shift to bankruptcy forum a dispute that could be resolved in state court; *In re Original IFPC Shareholders, Inc.,* 317 B.R. 738 (Bankr. N.D. Ill. 2004).

### C. Debtor is Not Reorganizing a New Business

The Forest Preserve District argues that the Debtor is not reorganizing a business, but starting a new business when chapter 11 is designed to reorganize existing businesses. It is correct. While the Debtor has not set up a new corporate entity, it is attempting to organize a new line of business, totally different from its past operations. The purpose of bankruptcy is to preserve going concerns and to maximize value for creditors, not to leverage a secured creditor's collateral for a new venture. *In re SR Real Estate Holdings, LLC*, 506 B.R. 121, 126 (Bankruptcy S.D. Cal. 2014).

### VI. Conclusion

Neither the Debtor nor any other party has shown that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time and that the grounds for dismissing or converting this case include an act or omission for which there exists a reasonable justification

that will be cured within a reasonable period of time fixed by the court.

The court finds that cause to dismiss or convert this case has been shown on three grounds by clear and convincing evidence (not merely by a preponderance of the evidence): Use of the bankruptcy system to delay creditors' exercise of enforcement of their rights under Illinois law; continuing diminution of the estate and use of creditors' collateral to start a new business.

This case is converted to chapter 7 because the Debtor is not likely to reorganize within a reasonable period of time since its experts testified that it will not have a grasp of its planting results before January, 2020. It is in the best interest of the estate and its creditors that a chapter 7 trustee, as an accountable neutral, be appointed to timely and fairly liquidate the debtor's assets, if any.

A separate order will be entered converting this case to chapter 7 and overruling the objection to plan as moot.

**Date: August 30, 2019**

**ENTERED:**

*Jacqueline P. Cox*

**Jacqueline P. Cox**
**United States Bankruptcy Judge**

Footnotes

1. The Illinois Appellate Court noted:

> There have been four separate lawsuits before this court concerning the underlying real estate transaction, which have resulted in six decisions by this court, with the instant order becoming the seventh. First, defendants Richard Cannon and Meryl Squires Cannon were plaintiffs in a taxpayer action against the Forest Preserve concerning its authority to acquire title to the property. *Baker v. Forest Preserve District*, 2015 IL App (1st) 141157, 393 Ill.Dec. 1, 33 N.E.3d 745. Next, defendants litigated the foreclosure of the primary mortgage on the property, leading to appeals in (1) *BMO Harris Bank, N.A. v. Royalty Properties, LLC,* 2016 IL App (1st) 151338-U, 2016 WL 6269967, (2) *Forest Preserve District v. Royalty Properties, LLC*, 2017 IL App (1st) 171564-U, 2017 WL 3758758, and (3) the instant appeal. While the foreclosure action was pending, defendant Royalty Farms, LLC, filed a separate action against the Forest Preserve, alleging that the Forest Preserve breached the duties it assumed as a landlord when it purchased the farm. *Royalty Farms, LLC v. Forest Preserve District*, 2017 IL App (1st) 161409, 419 Ill.Dec. 234, 92 N.E.3d 943. Finally, defendants have litigated the attempts to collect on the junior note on the property, leading to appeals in (1) *McGinley Partners, LLC v. Royalty Properties, LLC,* 2018 IL App (1st) 171317, — Ill.Dec. —, — N.E.3d —, appeal denied, No. 124085, 425 Ill.Dec. 163, 111 N.E.3d 971 (Ill. Nov. 28, 2018); and, most recently, in (2) *McGinley Partners, LLC v. Royalty Properties, LLC*, 2018 IL App (1st) 172976, — Ill.Dec. —, — N.E.3d —. There have also been at least three federal lawsuits, the most recent of which was considered by the Seventh Circuit in July 2018. See *Cannon v. Forest Preserve District*, No. 13 C 6589, 2014 WL 1758475 (N.D. Ill. May 2, 2014); *Squires-Cannon v. White,* 864 F.3d 515 (7th Cir. 2017); *Squires-Cannon v. Forest Preserve District*, 897 F.3d 797 (7th Cir. 2018).

*Forest Pres. Dist. Ov. Royalty Properties, LLC*, 2018 IL App. (1st)181323, f. 2.

2. The Seventh Circuit Court of Appeals noted:

> There have now been six separate lawsuits relating to the Cannons' default on the note—three state and three federal. The three state lawsuits are:
>
> (1) the foreclosure action, which is still pending;
>
> (2) the Cannons' lawsuit against the Forest Preserve and BMO (the "taxpayer action"), which was dismissed, *Baker v. Forest Preserve District*, 393 Ill.Dec. 1, 33 N.E.3d 745 (Ill. App. 2015) (affirming dismissal of all claims and rejecting theory that Forest Preserve's purchase of note and participation in foreclosure auction violated Cook County Forest Preserve District Act), and;

(3) a lawsuit by one of the Cannon entities against the Forest Preserve for breach of a purported lease after the foreclosure sale, which is stayed, *Royalty Farms, LLC v. Forest Preserve District of Cook County,* 419 Ill.Dec. 234, 92 N.E.3d 943 (Ill. App. 2017) (reversing order awarding possession of property to Forest Preserve and remanding and staying eviction proceedings pending resolution of foreclosure action).

The three federal lawsuits are:

(1) a lawsuit with allegations similar to this one, which was dismissed for lack of jurisdiction, *Squires Cannon v. Forest Preserve District of Cook County*, No. 13 C 6589, 2014 WL 1758475 (N.D. Ill. May 2, 2014);

(2) a lawsuit by Meryl Squires-Cannon against several Forest Preserve officials and employees for false arrest and malicious prosecution, which was dismissed on the merits, *Squires-Cannon v. White*, 864 F.3d 515 (7th Cir. 2017) (affirming dismissal), and;

(3) the lawsuit in this appeal, which the district court dismissed, *Squires Cannon v. Forest Preserve District of Cook County*, No. 14 C 5611, 2016 WL 2620515 (N.D. Ill. May 9, 2016).

*Squires-Cannon v. Forest Preserve District of Cook Cty.*, 897 F.3d 797, 801-02 (7th Cir. 2018).